```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

| | |
|---|---|
| Marilyn Smith, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|   v. | )  No. 15 cv 7552 |
| | ) |
| Dixon Direct Corporation D/B/A Dixon Direct, | ) |
| | ) |
| and | ) |
| | ) |
| Visant Corporation, a wholly owned subsidiary of Visant Holding Corporation, | ) |
| | ) |
| and | ) |
| | ) |
| UniCare Life & Health Insurance Company, | ) |
| | ) |
|       Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In this action, plaintiff Marilyn Smith claims that defendants--sponsors of her deceased son's ERISA-regulated employee benefits package, and the issuer, underwriter, and payor of the life insurance policy included in that package--violated their fiduciary duties by paying life insurance benefits to a third party, Nancy Wilkinson, instead of to her. All defendants have moved to dismiss the complaint. I grant their motions for the following reasons.

I.

Plaintiff alleges that after her son, John Reed, learned in late September of 2009 that he might have cancer, he designated plaintiff as the sole beneficiary of his employer-sponsored life insurance policy. In the ensuing months, after his cancer diagnosis was confirmed, Mr. Reed received radiation treatment and chemotherapy treatment, as well as numerous medications for pain, depression, and anxiety, which plaintiff alleges caused alterations in Mr. Reed's mood and cognitive functioning. On January 22, 2010, while Mr. Reed was under the influence of multiple medications, an individual named Nancy Wilkinson fraudulently induced him to execute a document granting Ms. Wilkinson power of attorney as Mr. Reed's attorney-in-fact.

Mr. Reed was admitted into hospice care on February 11, 2010. Eight days later, in the presence of an employee of defendant Dixon, Ms. Wilkinson completed a Statement of Beneficiary Designation form, designating herself as primary beneficiary of Mr. Reed's life insurance policy. The Dixon employee made no effort to determine whether Mr. Reed intended Ms. Wilkinson to be the beneficiary of his life insurance policy, nor did she seek to ascertain whether Ms. Wilkinson had authority to execute the Statement of Beneficiary Designation form on Mr. Reed's behalf.

Mr. Reed died the following day, on February 20, 2010. Ms. Wilkinson filed a Beneficiary Claim Form with defendant UniCare on March 9, 2010, seeking payment of proceeds due under the policy. Shortly thereafter, UniCare certified the claim and issued payment to Ms. Wilkinson in the amount of $179,166.74.

According to the complaint, "[s]everal months after UniCare had issued payment to Ms. Wilkinson, Plaintiff became aware that Nancy Wilkinson had designed (sic) herself as beneficiary of the Policy the day before Mr. Reed died and subsequently collected the benefit payment from UniCare." Cmplt. at ¶ 30. The complaint goes on to allege that in September of 2011, after plaintiff's efforts to recover the life insurance proceeds from Ms. Wilkinson were unsuccessful, she intervened in a state court action against Ms. Wilkinson, in which plaintiff claimed damages resulting from Ms. Wilkinson's tortious interference with her expectancy of receiving Mr. Reed's life insurance benefits.

Discovery in the state case revealed to plaintiff in December of 2012 that UniCare's internal claims processing protocol included criteria known as "Red Flag Indicators." Plaintiff alleges that several of these indicators were present in Ms. Wilkinson's claim for life insurance benefits under Mr. Reed's policy: 1) a beneficiary who does not have an insurable interest; 2) a change in beneficiary shortly before the death of the insured; 3) the initiation or change in beneficiary to an

3

apparently unrelated person, and 4) an unusual and unexpected change in beneficiary requested by the insured. Plaintiff alleges that under UniCare's protocol, the existence of multiple Red Flag Indicators required UniCare to "engage in further inquiry into possible fraudulent activity prior to issuing payment," but that UniCare failed to do so before paying benefits to Ms. Wilkinson.

Almost five years after learning that UniCare paid her son's life insurance benefits to Ms. Wilkinson, and more than two years after discovering the existence of the Red Flag Indicators, plaintiff submitted a claim to UniCare on February 17, 2015, claiming life insurance benefits under Mr. Reed's policy. UniCare denied the claim, explaining:

> We have reviewed the claim on behalf of Mr. John Reed and find that we paid the claim correctly to Nancy Wilkinson as the named beneficiary at the time of Mr. Reed's death. It is our position that the Power of Attorney granted to Ms. Wilkinson includes the authority for insurance transactions and does not preclude her from designating benefits.
>
> Additionally, it is the attorney-in-fact's, not UniCare's, responsibility to determine and abide by any loyalty to the principal/fiduciary obligations against self-dealing. UniCare is not in the position to monitor those, nor are we legally obligated to police those issues.

Cmplt. at ¶ 33. In response, plaintiff provided UniCare with evidence of Ms. Wilkinson's fraud, but UniCare again denied the claim. *Id*. at ¶ 34. Plaintiff formally appealed the denial on

4

April 6, 2015, arguing that UniCare failed to adhere to its own internal protocol by ignoring the Red Flag Indicators present in Mr. Reed's file. The appeal was denied in a letter stating:

> If you disagree with our determination, you...have the right to bring action in federal court under ERISA Section 502(a). You are entitled to receive, upon request and free of charge, copies of all documents, records, and other information relevant to your claim for benefits.

*Id.* at ¶ 35.

Plaintiff filed this lawsuit on August 27, 2015, claiming that she is entitled to equitable relief under § 502(a)(3) of ERISA, which provides that a participant may bring a civil action:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). Plaintiff's prayer for relief asks "either that the Policy be reformed to designate Plaintiff as Mr. Reed's proper life insurance beneficiary at the time of his death or, in the alternative, that a surcharge remedy is owed to Plaintiff requiring the payment of monies equal to at least $140,650.41 and accrued interest in order to make her whole." Cmplt. at 11.

Defendants seek dismissal of the complaint on two grounds. First, all defendants argue that plaintiff's claim is barred by

ERISA's three-year statute of limitations, and that dismissal is appropriate pursuant to Rule 12(b)(6) because plaintiff's allegations reveal that she was aware of her claim at least by September of 2011, when she intervened in the state court suit against Ms. Wilkinson.

Second, defendants Dixon and Visant argue that equitable relief under § 502(a)(3) is not appropriate because plaintiff's claim is properly characterized as a claim for benefits under the terms of Mr. Reed's policy, for which relief is available under § 502(a)(1)(B). That section provides that a plan participant may bring a civil action:

> to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). Dixon and Visant assert that because this section affords relief for the injury plaintiff alleges, *Varity Corp. v. Howe*, 516 U.S. 489 (1996), precludes her equitable claim.

II.

When resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), I must accept the well-pled factual allegations in the complaint as true and draw all reasonable inferences based on those allegations in plaintiff's favor. *Golden v. State Farm Mutual Automobile Ins. Co.*, 745 F.3d 252, 255 (7th Cir. 2014). "Dismissing a complaint as untimely at the pleading stage is an

unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt.*, LP, 559 F.3d 671, 674 (7th Cir. 2009). Nevertheless, "if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015).

ERISA's three-year statute of limitations is triggered when the person claiming to be harmed by a fiduciary's breach acquires "actual knowledge" of the occurrence giving rise to the alleged injury. *Rush v. Martin Petersen*, 83 F.3d 894, 896 (7th Cir. 1996). The Seventh Circuit defines "actual knowledge" in this context as "knowledge of the 'essential facts of the transaction or conduct constituting the violation,'" and has explained that it is "'not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality.'" *Id*. (quoting *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992). Accordingly, plaintiff's claim began to accrue when she became "aware of [her] injury and its probable cause," even if she did not know until later that the injury was tortiously inflicted. *U.S. v. Kubrick*, 444 U.S. 111, 119 (1979).

Applying these principles to this case, it is clear that the allegations in the complaint set forth all that is required

7

to establish the untimeliness of plaintiff's claim. The injury plaintiff alleges—defendants' payment to Ms. Wilkinson of life insurance benefits plaintiff claims were "rightfully owed to her"—occurred when UniCare made the payment to Ms. Wilkinson in March of 2010, which plaintiff states she discovered "several months" thereafter. Cmplt. at ¶ 30. That plaintiff asserted a claim against Ms. Wilkinson in September of 2011 cements the conclusion that plaintiff believed by that time that she was entitled to Mr. Reed's insurance benefits, and thus knew that UniCare's payment to Ms. Wilkinson caused her injury.

Plaintiff is correct that the statute of limitations is not triggered merely by a plaintiff's discovery that "something was awry." *Cf. George*, 674 F. Supp. 2d at 1041 (quoting Martin, 966 F.2d at 1086)). But her allegations establish far more than that. Indeed, plaintiff affirmatively alleges that she knew, within months of UniCare's payment to Ms. Wilkinson, about several of the "suspicious circumstances" she faults defendants for overlooking, namely, that Ms. Wilkinson had designated herself as beneficiary of Mr. Reed's policy one day before he died. Cmplt. at ¶ 30. Plaintiff further alleges that she pursued relief against Ms. Wilkinson because she believed the benefits UniCare paid Ms. Wilkinson were "rightfully owed" to her. *Id*. at ¶ 31. This case is thus unlike *Sidney Hillman Health Center of Rochester v. Abbott Laboratories, Inc.*, 782

F.3d 922 (7th Cir. 2015), in which the Seventh Circuit reversed the lower court's dismissal of an ERISA claim as untimely. In that case, the defendants had argued not that the complaint revealed the plaintiffs' *actual* knowledge of their injury, but instead that "a reasonably diligent benefit fund *should have known*" of its claims based on publicly available information. *Id*. at 928 (emphasis added). Noting that it was "unclear when the funds actually became aware" of facts central to their claim, the Seventh Circuit concluded that there was "simply not enough information in the record to determine when even a sophisticated benefit fund should have uncovered its injuries...." *Id*. at 929.

Plaintiff's citation to *George v. Kraft Foods Glob., Inc.*, 674 F. Supp. 2d 1031, 1042 (N.D. Ill. 2009), and *Iron Workers St. Louis Dist. Council Pension Fund v. Zenith Am. Sols., Inc.*, No. 13 C 7867, 2014 WL 3563295 (N.D. Ill., Jul. 17, 2014) (Kendall, J.), is unavailing for similar reasons. In both cases, the court declined to consider materials outside the complaint, which the defendants insisted revealed the plaintiffs' knowledge of their claims prior to the limitations period, and noted that the complaint itself "d[id] not provide any indication as to when Plaintiffs obtained actual knowledge of the alleged breaches." *George*, 674 F. Supp. 2d at 1043. *See also Iron Workers*, 2014 WL 3563295, at *2 (dismissal on ground

9

of untimeliness was inappropriate because the complaint was "silent as to when the Plaintiffs learned of the breach" and "to find in the Defendants' favor would require this Court to draw inferences against the Plaintiffs, which this Court cannot do at this stage in the action."). Unlike in *George* and *Iron Workers*, the complaint in this case explicitly alleges when plaintiff became aware of the essential facts giving rise to her claim.

Plaintiff's view that her claim did not begin to accrue until her discovery of the "Red Flag Indicators" in December of 2012 is not supported by the law. Even assuming that UniCare's failure to follow its internal protocol is evidence of unlawful conduct, the law is clear that plaintiff need not have known that defendants acted unlawfully to understand that she had a claim against them. *Martin*, 966 F.2d at 1086; *Rush*, 83 F.3d at 896. *See also Moore v. Burge*, 771 F.3d 444, 448 (7th Cir. 2014) ("the normal federal rule [is] that a claim accrues as soon as a person knows both the fact and the cause of an injury") (citing *Kubrick*, 444 U.S. at 119). While plaintiff's discovery of the Red Flag Indicators may have animated her belief that defendants' conduct was tortious, or influenced her decision to pursue her claim on the theory that defendants breached their fiduciary duties, the "*facts* or *transaction* that constituted the alleged violation" that caused plaintiff's injury remains defendants' payment of Ms. Wilkinson's suspicious benefits

10

claim. *Id*. (Original emphasis). Because plaintiff acknowledges that she learned these essential facts regarding that transaction in 2010, she was not entitled "wait on the sidelines" for additional evidence to emerge, or while she developed her legal theory. *See Moore*, 771 F.3d at 448 (plaintiffs aware of their injuries cannot "decide for themselves" to delay filing suit until they believe they can prevail; instead they must "file suit and try," or run the risk that the limitations period will expire).

Finally, plaintiff hints in her opposition that her claim may be timely under ERISA's six year statute of limitations "if the facts establish that Defendants engaged in fraud or concealed their underlying breaches or violations from Plaintiff."[1] Resp. at 5. But the complaint does not allege fraud or concealment by any defendant, and plaintiff offers no basis for her speculation about what discovery might reveal in this respect. *See Beauchem v. Rockford Products Corp.*, No. 01 C 50134, 2003 WL 1562561, at *3 (N.D. Ill. Mar. 24, 2003) (Reinhard, J.) (rejecting plaintiff's argument that ERISA's six-year limitations period applied because complaint did not allege

---

[1] Although ERISA breach of fiduciary duty claims must be filed within three years of a plaintiff's "actual knowledge" of the alleged breach, "in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113.

11

fraud or concealment).[2]  More importantly, any suggestion that defendants prevented plaintiff from discovering her claim before 2012 is inconsistent with her allegation that she actually knew about her claim in 2010 or 2011.  In view of these allegations, plaintiff's speculation about what the evidence "could establish" does not articulate a plausible basis for applying ERISA's longer, six-year limitations period.

For the foregoing reasons, I conclude that plaintiff's claim is untimely on its face.  Even if it were timely, however, I agree with defendants Dixon and Visant that plaintiff is not entitled to equitable relief under § 502(a)(3) of ERISA because § 502(a)(1)(B) affords an adequate remedy for the injury she asserts.  Accordingly, I discuss this alternative ground for granting their motion below.

---

[2] In her response brief, plaintiff argues, "Defendants' concealment is self-evident from the pleadings which allege that Defendants' actions resulted in her being uniformed (sic) for many months that the life insurance indemnity had already been paid.  Defendants are also alleged to have caused Plaintiff to believe that petitioning to intervene in the state court case against Wilkerson was her only option." Resp. at 7.  But the complaint contains no allegations to either effect, and plaintiff may not amend her complaint in response to plaintiff's motion. *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 972 (N.D. Ill. 2008) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("[I]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss....")). In any event, even if the complaint contained such allegations, the conduct plaintiff describes did not prevent her from discovering the essential facts underlying her claim by 2010 or 2011.

In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court characterized § 502(a)(3) as a "catchall" provision that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id*. at 512. The Court explained that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515. Although the Seventh Circuit has not expressly determined whether, under *Varity,* the availability of a benefits claim under § 502(a)(1)(B) precludes a claim for equitable relief pursuant to § 502(a)(3), it acknowledged in *Mondry v. American Family Mutual Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009), that "a majority of the circuits are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un* available under subsection (a)(3)." (Original emphasis).

Plaintiff strains to portray her claim here as something other than a review of UniCare's denial of benefits, but the allegations of the complaint belie her efforts. Indeed, the allegations reveal that plaintiff's administrative appeal of UniCare's decision rested on the very same facts she asserts in this case. Specifically, she challenged the validity of Ms. Wilkinson's designation of beneficiary, and she asserted that

13

UniCare failed to adhere to its internal protocol by ignoring the "Red Flag Indicators." Cmplt. at ¶¶ 33-35. In addition, the complaint quotes from UniCare's final denial of benefits, which informed plaintiff of her right to file a federal claim if she disagreed with its determination, and the complaint goes on to state, "[a]ll avenues of administrative appeal are now exhausted, and this matter is ripe for judicial review," solidifying the impression that this action is indeed an appeal of UniCare's decision. *Id*. at ¶ 38. Moreover, plaintiff concedes that the relief she seeks is the balance of the benefits she should have received "as her son's properly designated life insurance beneficiary." Resp. at 7.[3]

However styled, it is clear from the face of the complaint and from plaintiff's description of the relief she seeks that her claim is, in substance, for benefits under Mr. Reed's policy and thus barred under *Varity*. None of plaintiff's arguments to the contrary persuades me otherwise.

Plaintiff first states that she has "no claim" under § 502(a)(1)(B) because that section "authorizes actions to enforce her rights as beneficiary 'under the terms of the plan'

---

[3] Specifically, plaintiff states: "Plaintiff acknowledges in her Complaint that she was able to recover some of the life insurance benefits paid to Wilkerson following resolution of her state court case against Wilkerson's estate. However, had she received the indemnity that would have been paid to her but for Defendants' fiduciary breaches, she would have an additional $140,650.41, which remains due and owing."

14

and does not permit recovery of damages based upon breaches of fiduciary duty." Resp. at 8 (citing generally to *Varity*). But this sweeping argument is not supported by the case law, and it has no traction on the facts here. As the court in *Nemitz v. Metropolitan Life Ins. Co.*, No. 12 C 8039, 2013 WL 3944292 (N.D. Ill. July 31, 2013) (Kendall, J.), acknowledged, "courts necessarily consider whether a fiduciary has maintained its obligations in determining whether a denial of benefits was proper." *Id*. at *3. Indeed, at least one court of appeals has held that a breach of fiduciary duty claim that was based on allegedly improper claims procedures was actionable under § 502(a)(1)(B), and thus relief under § 502(a)(3) was precluded. *See Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 107 (4th Cir. 2006) (dismissing pursuant to Rule 12(c) an equitable claim under § 502(a)(3), noting that the plaintiff's "ultimate aim" was "securing the remedies afforded by § 1132(a)(1)(B).")). Similarly in this case, plaintiff's undisputed objective is to obtain the benefits to which she believes she is entitled under Mr. Reed's policy.

Plaintiff's blanket citation to *Varity* does not advance her cause. In *Varity*, the Court held that individual beneficiaries who were tricked by administrators of their ERISA-regulated employee benefits plan into withdrawing from the plan, and thus forfeited their right to benefits under the plan, had a claim

15

for equitable relief under § 502(a)(3) on the theory that the administrators' chicanery was a breach of their fiduciary duty. The Court explained that equitable relief was appropriate because the plaintiffs "were no longer members" of the plan, and, as non-members, had no claim for plan benefits and thus no claim under § 502(a)(1)(B). Here, by contrast, plaintiff could and did seek benefits under Mr. Reed's policy in February of 2015. According to her allegations, UniCare denied her claim not because she was not entitled to assert it, but on the merits, concluding that Ms. Wilkinson, not plaintiff, was the named beneficiary at the time of Mr. Reed's death. Cmplt. at ¶ 33.

Plaintiff next insists that she "has no available avenue of relief under § 502(a)(1)(B) because the policy dictates that life insurance benefits are paid to the beneficiary designated at the time of the decedent's passing." Resp. at 10. This argument, too, is at odds with the law. Plaintiff implies that she lacks relief under § 502(a)(1)(B) because UniCare's benefits payment was formally *correct,* i.e., it was made to the individual facially designated as Mr. Reed's beneficiary. But, "as many courts have recognized, whether Plaintiff's § 502(a)(1)(B) claim will succeed is irrelevant; the pertinent inquiry is whether Plaintiff can state a claim under § 502(a)(1)(B)." *Hakim v. Accenture United States Pension Plan*,

656 F.Supp.2d 801, 810-11 (N.D. Ill. 2009) (collecting cases). Indeed, in *Clark v. Hewitt Associates, LLC,* 294 F. Supp. 946 (N.D. Ill. 2003), the court rejected an argument similar to the one plaintiff raises.

In *Clark*, the wife of a deceased ERISA plan member claimed life insurance benefits under her husband's policy. The insurer denied coverage on the ground that the husband's death was a suicide, and thus subject to an exclusion in the policy. The plaintiff sought to estop the insurer from denying benefits, arguing that neither she nor her husband had been aware of the suicide exclusion. She argued that she should not be barred from pursuing equitable relief under § 502(a)(3) "because she may not be able to obtain benefits under [§ 502(a)(1)(B)] if Clark's life insurance policy does exclude benefits for those who commit suicide." The court rejected the plaintiff's attempt to analogize her claim to the one in *Variety* and dismissed it on the ground that unlike the *Variety* plaintiffs, she had "the *right* to bring a claim under § 1132(a)(1)(B), regardless of its merits." *Id*. at 950. (Original emphasis). The same is true here.

Plaintiff's final argument is that § 502(a)(1)(B) does not afford her adequate relief because she could not have sued defendants Dixon or Visant under that section. This argument does not withstand scrutiny. First, plaintiff relies on *Larson*

17

*v. United Healthcare Ins. Co.*, 723 F.3d 905 (7th Cir. 2013), for the proposition that only the payor of benefits may be sued under § 502(a)(1)(B). The issue in *Larson*, however, was not whether plan sponsors could be sued for benefits under § 502(a)(1)(B), but rather whether the insurer responsible for payment (i.e., UniCare's counterpart in that case) was amenable to such a suit. The court answered that question in the affirmative, concluding, "[t]o sum up, nothing in ERISA categorically precludes a suit against an insurance company for benefits due under § 1132(a)(1)(B)." *Id*. at 915. That holding is a far cry from plaintiff's suggestion that *only* the insurer can be sued under § 502(a)(1)(B). Indeed, the court observed in *Larson* that § 502(a)(1)(B) "plainly spells out who may bring this claim—a plan 'participant' or 'beneficiary'—but it does not specify who may be sued. Nor does it limit the universe of possible defendants; indeed, it makes no mention at all of which parties may be proper defendants." *Id*. at 913 (internal quotation marks and citation omitted). In short, *Larson* does not support plaintiff's argument that § 502(a)(3) is her only avenue for relief against Dixon and Visant. At all events, the dispositive issue under *Varity* is whether relief for the alleged injury is available under § 502(a)(1)(B). Even if Dixon and Visant could not be sued for benefits under that section, the availability of relief for the same injury against UniCare

18

precludes her equitable claim under § 502(a)(3). *See Plastic Surgery Group, P.C. v. United Healthcare Ins. Co. of New York, Inc.*, 64 F. Supp. 3d 459, 471 (E.D.N.Y. 2014) ("[t]he rule, then, is that claims for equitable relief under § 502(a)(3) must be dismissed if the plaintiff has adequate remedies under § 502(a)(1)(B)—even if those remedies lie against defendants other than the named defendant.") (Internal quotations and citation omitted).

III.

For the foregoing reasons, defendant's motion to dismiss is granted. Further, because the grounds for dismissal are not that the complaint is "lacking in specificity or otherwise improperly pleaded," *see* Resp. at 13, plaintiff's request for leave to amend the complaint is denied.

**ENTER ORDER:**

/s/ Elaine E. Bucklo
**Elaine E. Bucklo**
United States District Judge

Dated: January 21, 2016